# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

**THE HUMANE SOCIETY OF THE UNITED STATES**,

Plaintiff,

v.

**U.S. DEPARTMENT OF AGRICULTURE and FARM SERVICE AGENCY**,

Defendant.

Case No. 1:17-cv-02570 (TNM)

---

## MEMORANDUM OPINION

The Humane Society of the United States ("Society") submitted a Freedom of Information Act request seeking information about loans issued to food animal production facilities in certain California counties. The Farm Service Agency—which runs the loan program—invoked several FOIA exemptions to withhold details about the borrowers, their loan applications, and the issued loans.

The Society sues the Farm Service Agency and its parent, the U.S. Department of Agriculture (collectively, the "Agency"). It challenges the Agency's decision to not produce a loan recipient's name, address, and operation type; the intended use of the loan; and the documents the Agency creates during its environmental review of these loans. According to the Society, no statute prohibits the Agency from disclosing these requested materials. The Society also asserts that such information is not privileged and confidential and that the public's interest in monitoring use of public funds and the Agency's compliance with its statutory duties outweighs any privacy interest. The Court agrees, with some limitations. The Court will grant the Society's summary judgment motion and deny the Agency's motion.

# I.

The Agency administers a Farm Loan Program ("FLP") to assist farmers and ranchers who cannot obtain conventional loans from private lenders or who have suffered financial setbacks. *See* Defs.' Statement of Material Facts ("Defs.' SOMF") ¶¶ 30–31, ECF No. 64-2. The FLP is available to "individual and family-sized farmers and ranchers." *Id.* ¶ 31. The Agency offers both direct and guaranteed loans, which allow borrowers to make capital improvements or purchase livestock and equipment. *Id.* ¶¶ 32, 37–38.

An applicant must meet several criteria to qualify for a loan. "Primarily, the applicant must be the operator or owner/operator of a family sized farm." *Id.* ¶ 50. Borrowers also "must have acceptable credit history" and "the legal capacity to incur the obligations of the loan," and they cannot "be delinquent on a federal debt" or "have any outstanding unpaid judgments." *Id.* ¶ 51.

Before issuing a loan, the Agency undertakes an environmental review of the intended use of the funds. *See id.* ¶ 52. It completes an Environmental Screening Worksheet—Form FSA-850 (formerly Form RD-1940-22)—"to evaluate potential environmental impacts in keeping with the provisions of the National Environmental Policy Act" ("NEPA"). *Id.* ¶ 53. The "FSA-850 may be prepared by employees who have received appropriate environmental training." *Id.* ¶ 54. Once the Environmental Screening Worksheet is complete, an "authorized agency official who has been delegated the appropriate level of authority (and completed environmental training) for the proposed action must review and concur with the preparer's findings before processing of the loan request." *Id.*

If approved, the loan "funds are disbursed" and "[b]orrower repayment of the loan funds received is scheduled out either at the end of the operating cycle or in annual installments, depending on the term of the loan." *Id.* ¶ 58.

The Society is a nonprofit organization "whose mission is to fight to end suffering for all animals." Pl.'s Statement of Material Facts ("Pl.'s SOMF") ¶ 1, ECF No. 65-2. The Society submitted a FOIA request to the Agency for "any and all records relating or referring to funds granted to, denied to, or requested by" food animal production, processing, or slaughtering facilities in 16 California counties that experienced drought between February 2015 and August 2016. *Id.* ¶¶ 16–17; *see also* Defs.' SOMF ¶ 1. The Society defined "funds" to include "loans, grants, payments, and other types of financial transaction." Decl. of Matthew Penzer Ex. A at 5, ECF No. 65-4.[1] According to the Society, it submitted the FOIA request "to assess the environmental impacts" of the FLP loans and loan guarantees and "to ensure [the Agency] is complying with its statutory duties." Pl.'s SOMF ¶ 16.

The Society challenged the Agency's response to its FOIA request, and the parties cross-moved for summary judgment. Defs.' SOMF ¶¶ 19–20. During briefing, the Agency identified "a number of irregularities with [its] production of documents." *Id.* ¶ 21; *see also* Pl.'s SOMF ¶ 20. So the Court denied the motions and ordered the Agency to reprocess the documents. Defs.' SOMF ¶ 22. The Agency later made three releases of records and redacted material under FOIA Exemptions 3, 4, and 6. *See id.* ¶¶ 24, 26, 27.

The Society again contests some of the Agency's withholdings, and the parties have filed renewed cross-motions for summary judgment. Their motions are ripe for disposition.[2]

## II.

At summary judgment, the movant must show that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

---

[1] All page citations refer to the pagination generated by this Court's CM/ECF system.

[2] The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

moving party first must identify those portions of the record that show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up). The Court construes the evidence "in the light most favorable to the non-moving party." *Brubaker v. Metro. Life Ins. Co.*, 482 F.3d 586, 588 (D.C. Cir. 2007).

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (cleaned up). The statute's nine enumerated exemptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant objective." *Id.* at 361. Courts narrowly construe FOIA's exemptions "in keeping with FOIA's presumption in favor of disclosure." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 869 (D.C. Cir. 2010).

"The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "[S]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Pub. Citizen v. U.S. Dep't of Health & Hum. Servs.*, 975 F. Supp. 2d 81, 94 (D.D.C. 2013) (cleaned up). Courts review the applicability of FOIA exemptions de novo. *King v. U.S. Dep't of Just.*, 830 F.2d 210, 217 (D.C. Cir. 1987). FOIA cases typically resolve at the summary judgment stage. *See Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

### III.

The Agency spills much ink justifying withholding decisions on information that the Society does not request. *See* Reply in Supp. Pl.'s Cross-Mot. Summ. J. ("Pl.'s Reply") at 6, ECF No. 70 ("[The Agency] devotes an exceptionally large portion of its brief to defending

information that [the Society] has repeatedly and consistently stated it does not seek and is not challenging in this case."). The Society disputes only some of the material the Agency withheld. Specifically, the Society challenges the Agency's decision not to produce the following categories of information under FOIA Exemptions 3, 4, and 6:

(1) the name of the loan recipient;
(2) the street address for the operation receiving the loan and/or the loan project's specific location;
(3) the type of operation receiving the loan (*e.g.*, dairy and milk production facility) and/or the North American Industry Classification System ("NAICS") number of the operation receiving the loan[3];
(4) the loan purpose and/or intended use of loan proceeds; and
(5) information relating to the environmental factors that are part of FLP reviews.

*See* Mem. of P. & A. in Supp. Pl.'s Cross-Mot. Summ. J. ("Pl.'s Cross-Mot.") at 13, ECF No. 65-1; Pl.'s SOMF ¶ 22.[4] So the Court only considers the asserted FOIA exemptions for the disputed information.

## A.

First, the Agency asserts that it properly invoked FOIA Exemption 3. This exemption authorizes an agency to withhold records that are "specifically exempted from disclosure by another statute" if the statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3)(A)(i).

---

[3] The Court considers the NAICS number to be interchangeable with operation type because the Society seeks either piece of information. *See* Decl. of Chris Holbein ("Holbein Decl.") ¶ 16, ECF No. 65-7 (noting that NAICS number "would also be reflective of the operation type"). If it is not, the same analysis applies to both throughout.

[4] The Society does not request the loan amount because the Agency "already releases that information generally." Pl.'s Reply at 7 n.2. "Had [the Agency] not been releasing the amounts of the loans, that too would be included in the list of information sought." *Id.*

The Agency relies on the Food, Conservation and Energy Act, 7 U.S.C. § 8791 ("Section 8791"). *See* Defs.' Mem. of P. & A. in Supp. Mot. Summ. J. ("Defs.' Mot.") at 12 n.1, ECF No. 64-1; Decl. of Kimberly Morris ("Morris Decl.") ¶ 13, ECF No. 64-4 (detailing information withheld under Section 8791). This statute provides in relevant part:

> Except as provided in paragraphs (3) and (4), the Secretary, any officer or employee of the Department of Agriculture, or any contractor or cooperator of the Department, shall not disclose—
>
> (A) information provided by an agricultural producer or owner of agricultural land concerning the agricultural operation, farming or conservation practices, or the land itself, in order to participate in programs of the Department.

7 U.S.C. § 8971(b)(2).[5]

The Court conducts a two-step inquiry under Exemption 3. It first decides whether the statute is a "statute of exemption as contemplated by exemption 3"—or a "withholding statute"; if so, it then examines whether "the withheld material satisfies the criteria of the exemption statute." *Fitzgibbon v. CIA*, 911 F.2d 755, 761–62 (D.C. Cir. 1990) (cleaned up); *see also Labow v. U.S. Dep't of Just.*, 831 F.3d 523, 527 (D.C. Cir. 2016) (same).

The parties agree on the first question: Section 8791 is an exemption statute under Exemption 3. *See* Defs.' Reply in Further Supp. Mot. Summ. J. ("Defs.' Reply") at 5, ECF No. 68 ("Both parties agree that Section 8791 is a withholding statute for purposes of FOIA Exemption 3."). So does the Court. "Section 8791 prohibits disclosure and gives little discretion to the agency as to how the provision should be applied." *Zanoni v. U.S. Dep't of Agric.*, 605 F. Supp. 2d 230, 236 (D.D.C. 2009). It "leaves no discretion to the agency as to disclosure of this type of information." *Id.* So "there is no dispute that [Section 8791] qualified for FOIA

---

[5] Paragraphs (3) and (4) address "Authorized Disclosures" and "Exceptions," most of which do not apply here.

exemption 3 status." *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1148 (8th Cir. 2011).

The only question, then, is whether Section 8791's disclosure prohibition applies here. To the Agency, it does. The requested loan data is "producer-submitted information," Suppl. Decl. of Kimberly Morris ("Suppl. Morris Decl.") ¶ 10, ECF No. 68-2, about "agricultural operation, farming or conservation practices, or the land itself on which such operation, farming or practices occur," which applicants must provide to participate in the FLP, Decl. of John Welch ("Welch Decl.") ¶ 34, ECF No. 64-9.

The Society disagrees. It cites an exception to Section 8791, which authorizes "disclosure of payment information (including payment information and the names and addresses of recipients of payments) under any [Agency] program that is otherwise authorized by law." 7 U.S.C. § 8791(b)(4)(A). The Society argues that the requested loan material constitutes "payment information" that is "otherwise authorized" by FOIA. *See* Pl.'s Cross-Mot. at 15–19.

The main question is whether an FLP loan or loan guarantee is a "payment." If it is, Section 8791's "payment information" exception governs here. The statute does not define "payment."

"When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). An ordinary meaning of "payment" is the "disbursement of money." *Payment*, Black's Law Dictionary (11th ed. 2019). It is the act of "paying," *Payment*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/payment, which means "to make a disposal or transfer of (money)," *Pay*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/pay. Under the FLP, "funds are disbursed" to qualifying borrowers, Welch Decl. ¶ 31, either directly from

the government or through a commercial lender, *id.* ¶ 7 ("Direct loans are made and serviced by

FSA using Federal Government funds."); *id.* ¶ 8 ("Guaranteed loans are made and serviced by

commercial lenders[.]").  FLP loans and loan guarantees thus constitute "payments" because they

involve transfers of money from one entity (the government or private lender) to another (the

borrower).

This conclusion is supported by other statutes.  When Congress has defined "payment" in

other federal statutes, it has included loans and loan guarantees within that definition.  *Cf.*

*Hamilton v. Lanning*, 560 U.S. 505, 514–15 (2010) (consulting definitions of "projected" in

other federal statutes to interpret that same term in 11 U.S.C. § 1325(b)).  The Payment Integrity

Information Act of 2019, for example, defines "payment" to include "any transfer or

commitment for future transfer of Federal funds such as . . . loans, loan guarantees[.]"  31 U.S.C.

§ 3351(5); *see also* Improper Payments Information Act of 2002, Pub. L. No. 107–300, 116 Stat.

2350 (defining "payment" to "includ[e] a commitment for future payment, such as a loan

guarantee").  With no statutory definition, the Court chooses an interpretation that tracks the

term's plain meaning and other federal statutes.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612,

1619 (2018) ("It is this Court's duty to interpret Congress's statutes as a harmonious whole

rather than at war with one another.").

The Agency suggests that an FLP loan or loan guarantee cannot be a "payment" because

borrowers "only have the temporary use of the money" and "have to repay loans with interest."

Defs.' Reply at 7 n.5 (cleaned up).  But a *re*payment presumes there has already been a payment.

*See Repay*, Merriam-Webster Dictionary Online, https://www.merriam-

webster.com/dictionary/repayment ("to pay back" or "to make a return payment to").[6] FLP borrowers cannot repay money unless it was first paid to them. *See* Welch Decl. ¶ 31 ("Borrower repayment of the *loan funds received* is scheduled out either at the end of the operating cycle or in annual installments, depending on the term of the loan." (emphasis added)). Whether temporary or permanent, a payment is a payment.

But the "payment information" exception does *not* cover loan applications and their supporting documentation. No such "payment"—or transfer or disbursement of funds—has occurred yet. *Accord Pub. Just. Found. v. Farm Serv. Agency*, No. C 20–01103 WHA, 2021 WL 1873186, at *4 (N.D. Cal. May 10, 2021) ("[T]he application for the loan by the farmer is a mere request, not information that circumscribes the payment."). Indeed, not all applicants receive loans. *See* Welch Decl. ¶ 29 (detailing procedures for when a loan is not approved). So the Agency need not disclose loan application materials under Section 8791.

With this distinction in mind, the Court turns to whether the "payment information" exception allows disclosure of the material the Society seeks here. It does.

The Agency now agrees to provide names and addresses of loan recipients that appear in promissory notes. *See* Defs.' Sur-Reply at 3, ECF No. 71-1 ("[W]ith respect to the promissory notes that were issued by [the Agency], [the Agency] will provide [the Society] with the loan amount, along with the names and addresses contained within those promissory notes.").[7] This

---

[6] Whether the IRS—an independent federal agency—chooses to tax the money does not affect whether that money is a "payment" under Section 8791. *See* Welch Decl. ¶ 31. And the Agency offers no authority to suggest otherwise.

[7] The Court will grant the Agency's unopposed motion to file a sur-reply because the Society relied on a recent decision in its reply brief that the Agency did not have a chance to address. *See* Consent Mot. for Leave to File Sur-Reply, ECF No. 71.

information is plainly disclosable under the "payment information" exception.[8]  *See* 7 U.S.C.

§ 8791(b)(4)(A) (authorizing disclosure of "names and addresses of recipients of payments");

*accord Pub. Just. Found.*, 2021 WL 1873186, at *3 (ordering Agency to "turn over all

documents necessary to disclose the names and addresses of all recipients of the loan funds in

question as well as the dollar amount and dates paid by the agency to the recipient").

 The NAICS number is also disclosable.  By its plain language, the statute contemplates

that the Agency can provide more than names and addresses.  *See* 7 U.S.C. § 8791(b)(4)(A)

("*including* payment information and the names and addresses of recipients of payments"

(emphasis added)); *accord Pub. Just. Found.*, 2021 WL 1873186, at *2 ("The term 'including' in

Subsection 4(A) indicates that 'payment information' covers more than names and addresses.").

The NAICS number provides comparable information to a name or address.  It is a business

classification "for the purpose of collecting, analyzing, and publishing statistical data related to

the U.S. business economy."  U.S. Census Bureau, *North American Industry Classification

System: Introduction to NAICS*, http://www.census.gov/eos/www/naics/index.html.  Here, the

NAICS number would "describ[e] the primary farming/ranching operation type."  Decl. of

Jacque Johnson ¶ 7, ECF No. 64-3.  The Court finds that an NAICS number is "payment

information" that the Agency can provide under Section 8791's exception.

---

[8]  For this reason, *Zanoni v. U.S. Dep't of Agric.*, 605 F. Supp. 2d 230 (D.D.C. 2009) is
distinguishable.  The court in *Zanoni* found that the agency properly relied on Section 8791 to
withhold names, addresses, and operation type in the National Information Premises Repository
under Section 8791.  *Id.* at 237.  The court, though, acknowledged "that [Section 8791] does
permit the Secretary to disclose information applying to *specific instances* in which the statute
permits disclosure."  *Id.* (emphasis added).  It found that none of these exceptions applied.  *Id.*
But here the "payment information" exception is a "specific instance" that *does* authorize
disclosure of the names, addresses, and NAICS number of FLP loan and loan guarantee
recipients.

So too for a loan's intended use.  Again, the Court finds another federal disclosure statute instructive.  *Cf. Hamilton*, 560 U.S. at 514–15.  The Federal Funding Accountability and Transparency Act of 2006,[9] added as a note to 31 U.S.C. § 6101, requires the federal government to publicly disclose certain information for each "Federal award," defined to include loans and "other forms of financial assistance."  31 U.S.C. § 6101 note (§ 2(a)(2)(A)(i)).  As part of the disclosure, the government must provide "an award title descriptive of the purpose of each funding action."  *Id.* § 6101 note (§ 2(b)(1)(C)).  This statute therefore considers a loan's purpose to be the type of "information on the award" that can be publicized.  The Court will not impose a contrary reading on Section 8791.  *See Epic Sys. Corp.*, 138 S. Ct. at 1619.  If the Agency has "earmarked" or "circumscribe[d]" the loan proceeds for a specific purpose, that information is "payment information" that the public can access.  *Accord Pub. Just. Found.*, 2021 WL 1873186, at *4.

Finally, the Society seeks the "environmental checklist pertaining to the land use or environmental resource."  *See* Defs.' Mot. at 12 n.1.  The Agency suggests that it properly withheld its Environmental Worksheets because they "contain information *derived* from the actual loan application."  Defs.' Reply at 8 (emphasis added).  Not so.  Section 8791's disclosure bar applies only to information "*provided by* an agricultural producer or owner of agricultural land."  *See* 7 U.S.C. § 8971(b)(2)(A) (emphasis added).  Rather than falling into Section 8791's payment information exception, this information is not covered by Section 8791 at all.

The Agency admits that the FSA-850 Environmental Screening Worksheet (formerly Form RD-1940-22) "may be prepared by employees who have received appropriate

---

[9]  Pub. L. No. 109–282.  This law was amended by the Digital Accountability and Transparency Act of 2014, Pub. L. No. 113–101.

environmental training." Welch Decl. ¶ 27. This employee prepares "findings," and another agency official "must review and concur with the preparer's *findings* before processing of the loan request." *Id.* (emphasis added). So the Agency, not the borrower, generates these documents. Even if they rely on information from loan applicants—which is not clear from the Agency's declarations—the Environmental Worksheets are not "provided by" farmers and ranchers because they reflect Agency analysis and work. *Cf. Phil. Newspapers, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 69 F. Supp. 2d 63, 66–67 (D.D.C. 1999) (holding assessments that "involve[] analysis" were "prepared by the government" despite relying on "raw data obtained from [loan applicants]"). Section 8791 does not bar production of these worksheets, meaning that Exemption 3 does not apply.

*     *     *

Ultimately, the Society's victory here may be hollow. Most of the withheld material under Exemption 3 "consist[s] of loan application forms and supporting documentation." Defs.' Reply at 6; *see also* Defs.' Sur-Reply at 2 ("Here, as described in [the Agency's] *Vaughn* indices, the records at issue, spare the promissory notes, consist of loan application forms and supporting documentation."). And to be clear, the Court agrees that the Agency need not release loan application materials under Section 8791 because they are not "payment information."

The Society, though, requests the type of "payment information" that Section 8791 allows the Agency to produce. The limited loan data the Society seeks—loan recipients' names, addresses, or NAICS numbers (type of operation), and the Environmental Review Worksheets— is not exempt. If the Agency has withheld this material in loan (not application) documents, it is not protected under Exemption 3.

The Court's remaining analysis focuses only on the categories of material not covered under Exemption 3. *Accord Pub. Just. Found.*, 2021 WL 1873186, at *6 ("Information properly withheld under Exemption 3 . . . does not require further analysis under Exemption 6[.]").

**B.**

The Court next turns to FOIA Exemption 4, which protects confidential commercial information. To start, it is unclear what redacted information the parties dispute under this exemption. The Agency says that it "assert[ed] Exemption 4 as an additional and independently sufficient basis for exempting the withheld information from release." Defs.' Mot. at 19. But it apparently did not apply Exemption 4 to withhold most of the information the Society seeks, including a loan recipient's name, street address, or NAICS number. *See* Defs.' Reply at 10 (stating that "identification of a farmer as a loan recipient, or a farmer acknowledging being the recipient of an [Agency] loan, is not the type of information withheld here pursuant to Exemption 4"). The Agency instead redacted various financial records not at issue.[10]

---

[10] This information includes:

> [L]oan applications, credit presentations, balance sheets (assets, liabilities, and equity), balance sheet schedule (cash & equivalents, crop values, machinery and equipment values, farm vehicles values, raised breeding stock values, real estate values, loan schedule information and personal liabilities), income/expense trends (operating income, operating expenses, nonoperating expenses, and ending cash on hand) income statements (revenue, value of farm production, expenses, net income, projected and past production capacity), repayment capacity, credit history, and other detailed information that reflects the finances of the operations and/or individuals such as planned expansion, relationships with suppliers and buyers, supply costs, anticipated returns and profits, principal sum, rates, installment amounts, records of advances, projected monthly cash flow, proposed security, etc.

Morris Decl. ¶ 14; *see also* Decl. of Barbara McLean ("McLean Decl.") ¶ 32, ECF No. 64-8.

Although not mentioned in its briefs, the Agency did invoke Exemption 4 to redact the "funds purpose" or "type of assistance" in some documents. *See, e.g.*, Defs.' Mot. Ex. A at 6, ECF No. 64-5; *id.* Ex. B at 3, ECF No. 64-6; Ex. C at 4, ECF No. 64-7. But at least some of this information appears only in loan applications. *See id.* Ex. C at 4 (withholding of "purpose of loan" in "FSA-2330 Request for Microloan Assistance"). Recall that a loan's purpose is *not* disclosable under Exemption 3 if it appears only in a loan application because that is not "payment information." *See supra* Section III.A.

Despite the parties' extensive briefing then, the Court's inquiry is limited. It need only decide whether the Agency correctly applied Exemption 4 to withhold the loan purpose or intended use of loan proceeds in documents other than loan application materials.[11]

"Exemption 4 shields from mandatory disclosure commercial or financial information obtained from a person and privileged or confidential." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019) (cleaned up). To justify its withholdings under this exemption, the Agency must show that the information is "(1) commercial or financial, (2) obtained from a person outside the government, and (3) privileged or confidential." *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527, 529 (D.C. Cir. 1979). Information is "privileged or confidential" if it is "customarily and actually treated by its owner" as such. *Food Marketing Inst.*, 139 S. Ct. at 2365–66. "After *Food Marketing*, . . . it is an open question . . . whether government assurance

---

[11] If the Agency did intend to withhold a loan recipient's name, street address, or NAICS number under Exemption 4, the same analysis applies to this information as well.

The Agency also does not mention that it withheld Environmental Worksheets under Exemption 4. If it did, the Court finds that the Agency failed to meet its burden to justify this withholding. *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1088.

that information will remain private is necessary for such information to qualify as 'confidential' under Exemption 4." *WP Co. v. U.S. Small Bus. Admin.*, 502 F. Supp. 3d 1, 12 (D.D.C. 2020).

The withholding agency "must meet the burden of proving the provider's custom." *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871,879 (D.C. Cir. 1992). "In addition, in assessing customary disclosure, the court will consider how the particular party customarily treats the information, not how the industry as a whole treats the information." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 148 (D.C. Cir. 2001).

The Agency has not met its burden under Exemption 4. First, its declarations do not establish that borrowers customarily and actually treat their loan's purpose as privileged and confidential. And second, the Agency disclaimed any assurance of confidentiality over this information.

## 1.

"To establish submitter custom for purposes of Exemption 4, it is sufficient for an agency to proceed solely on its sworn affidavits." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 110 (D.D.C. 2019) (cleaned up). The Agency relies on two declarations here. But both fall short.

First, the Agency offers the declaration of Walter Nicolau III, the owner of a goat dairy farm. *See* Decl. of Walter Nicolau ("Nicolau Decl.") ¶¶ 2–3, ECF No. 64-10. The Agency represents that Nicolau's "confidentiality and privacy practices and concerns are representative of those held by typical applicants for FSA loans." Welch Decl. ¶ 39; *see also* Defs.' Mot. at 20 ("Borrowers like Mr. Nicolau undertake substantial efforts to maintain the confidentiality of their records because the information is proprietary and its release can cause competitive harm."). Nicolau attests that he objects to disclosure of certain "confidential records," defined to include

his farm's street address.  Nicolau Decl. ¶ 6.  He also represents that these records "contain loan requests and loan amount that when combined can lead other farms in the industry to acquire knowledge about possible projects or capital investments."  *Id.* ¶ 7.  According to Nicolau, his farm "undertakes substantial efforts" to keep all this information confidential.  *Id.* ¶ 9.

But the record shows otherwise.  Nicolau Farm discloses its ostensibly confidential street address—with a handy Google maps link—on the farm's public website.  *See* Decl. of Margaret Robinson ("Robinson Decl.") ¶¶ 2–7, ECF No. 65-5.  Here it is:





*Id.* ¶ 2; *see also id.* Exs. A–E.  Another public website also lists the farm's address and even offers tours of the property.  *Id.* ¶ 7.  The Nicolau declaration is thus "called into question by contradictory evidence in the record."  *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994) (cleaned up).

The Court is "not obliged to accept [an] affidavit without question."  *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984); *see also Humane Soc'y v. Animal & Plant Inspect. Serv.*, 386 F.

Supp. 3d 34, 44 (D.D.C. 2019) ("Ultimately, it is the Court, not the agency, that must be satisfied with the propriety of a claimed FOIA exemption."). When, as here, evidence undermines the credibility of a declaration, the Court will not accept it. The Agency cannot rely on Nicolau's declaration as "representative of those held by typical applicants of FSA loans." Welch Decl. ¶ 39. And this is the only declaration the Agency offers to establish borrowers' practices and concerns over the requested material.

The Agency apparently does not disagree. It makes no effort to resuscitate the Nicolau declaration, failing to mention it at all in its opposition brief. It thus concedes that the Nicolau declaration cannot reflect how loan recipients customarily and actually treat the purpose of their loans. *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997); LCvR 7(b).

Next, the Agency provides a declaration from John Welch, an Agency employee with the Farm Production and Conservation Business Center who "was personally involved in farming and ranching" and had his own production agriculture operation. *See* Welch Decl. at 1. Welch emphasizes the competitive harms a farmer may experience "[i]f it becomes common knowledge that someone has an FSA loan." *Id.* ¶ 40.[12] According to Welch, "simply revealing that [farmers] have loans reveals information about their financial viability." *Id.* So "[s]ubmitters . . . have those worries heightened here by the fact that [FLP] farm loans (not commodity loans) are only available to those who cannot obtain credit elsewhere." *Id.*

---

[12] There are passing references to competitive harms in other Agency declarations as well. *See* McLean Decl. ¶ 32 ("Disclosure of this Confidential Information could be used by a third party to gain a competitive advantage over the applicant and likely result in substantial economic harm or injury."); Morris Decl. ¶ 14 (same).

This declaration too is "called into question by contradictory evidence in the record." *See Gallant*, 26 F.3d at 171. Welch says that "simply revealing that [farmers] have loans reveals information about their financial viability." Welch Decl. ¶ 40. But successful loan candidates must have "acceptable credit history," "not be delinquent on a federal debt," "not have any outstanding unpaid judgments," and "not have received debt forgiveness from FSA." Defs.' SOMF ¶ 51. Receipt of an FLP loan thus may not "bear as direct a relationship to the value of [borrowers'] land or their financial situation." *Pub. Just. Found.*, 2021 WL 1873186, at *7.

More, evidence shows that borrowers *do* disclose receipt of an FLP loan and its purpose, contrary to Welch's representation. Indeed, the Agency highlights these borrowers on its blog, which is publicly available. *See* Robinson Decl. ¶ 8. The Agency spotlighted one borrower who "worked with [the Agency] through their direct loan program to purchase equipment," noting that "he received a line of credit through their direct loan program to fund his operating expenses." *Id.* ¶ 9. The Agency discussed in another post that its loans helped a pair of borrowers "expand their operation." *Id.* ¶ 10. These business owners identified themselves on the post and shared that they "built [their] winery and tasting room with Direct Farm Operating Loan funds," while noting that another FLP loan allowed them to construct a commercial kitchen. Molly Rose, *Savoring the Fruits of Labor*, FSA Fence Post Blog (Aug. 2, 2019, 11:17 AM), https://fsa.blogs.govdelivery.com/2019/08/02/savoring-the-fruits-of-labor/. The record offers examples of other borrowers similarly acknowledging their loan and loan purposes on the Agency's public blog. *See* Robinson Decl. ¶¶ 11–18.

"[A]fter *Food Marketing*, whether the government has disclosed the same type of information on prior occasions remains a consideration when weighing whether the information is confidential." *Humane Soc'y Int'l v. U.S. Fish & Wildlife Serv.*, No. CV 16-720 (TJK), 2021

WL 1197726, at *5 (D.D.C. Mar. 29, 2021). The Agency has shared details about borrowers' intended use of their loan proceeds. This prior disclosure undermines the Agency's contention that the information is confidential.

**2.**

The Agency also disclaimed that it would maintain confidentiality over the intended use of an FLP loan or loan guarantee. True, "it is an open question in this Circuit whether government assurance that information will remain private is necessary for such information to qualify as 'confidential' under Exemption 4." *WP Co.*, 502 F. Supp. 3d at 12. But "that does not mean that representations the government makes in connection with obtaining information cannot inform the court's determination about how the [borrowers] customarily and actually treat it, or whether it is confidential, for purposes of Exemption 4." *Humane Soc'y Int'l v. U.S. Fish & Wildlife Serv.*, 2021 WL 1197726, at *5.

The Agency admits that there are a "limited range of authorized disclosures to which a participant's information can be subjected." Defs.' Mot. at 20. It refers to a statement in the loan application "made in accordance with the Privacy Act of 1974." Welch Decl. Ex. A at 20. This statement provides that "information collected on this form may be disclosed to other Federal, State, Local government agencies, Tribal agencies, and nongovernmental entities that have been authorized access to the information by statute or regulation and/or as described in applicable Routine Uses Identified in the System of Records Notice for USDA/FSA-14." *Id.* The Agency asserts that "[b]y identifying who might have access to a borrower's information, [it has] also identified who does not have access to a borrower's information: anyone not on the list." Defs.' Mot. at 21. To the Agency, its disclosure "communicate[s] to the agricultural

producers that their submitted information is protected by the Privacy Act."  Defs.' Reply at 10.

Not so.

For starters, the Society *is* on the list of those "who might have access to a borrower's

information," Defs.' Mot. at 21, including the "Purpose of Loan," Welch Decl. Ex. A at 24 (Part

D of Loan Form).  The Society is a nongovernmental entity.  *See* Pl.'s SOMF ¶ 1.  And the

Privacy Act does not prohibit disclosures otherwise authorized by FOIA.  *See* 5 U.S.C.

§ 552a(b)(2).  So the loan application's disclosure applies to the Society's request here.

The Agency also points to its System of Records Notice, which "identifies a limited

range of authorized disclosures to which a participant's information can be subjected."  Defs.'

Mot. at 20.  The Agency says that "[u]nless one of those routine uses is at play," borrowers

would not expect the Agency to disclose their information.[13]  Defs.' Reply at 10.

Some of these "routine uses," though, contemplate disclosure to the public.  Routine Use

X grants the media and public access to information provided by borrowers "when there exists a

legitimate public interest in the disclosure of the information . . . except to the extent it is

determined that release of the specific information in the context of a particular case would

constitute an unwarranted invasion of personal privacy."  84 Fed. Reg. 10,775, 10,778–79 (Mar.

22, 2019).  And Routine Use W allows the Agency to share "information about individual[s]"

under enumerated federal statutes "or similar laws requiring agencies to make available publicly

names, locations, and other information concerning federal assistance, including grants,

---

[13]  The Agency also refers to a Right to Financial Privacy Act of 1978 Notice, which states that
the Agency will not share borrowers' "financial records held by financial institutions."  Defs.'
Mot. at 20 (cleaned up).  This disclosure is not relevant because the Society does not pursue
these financial records.

subgrants, loan awards, cooperative agreements and other financial assistance." *Id.* at 10,779.

The Society's FOIA request fits either (or both) of these routine uses.

Finally, the Agency contends that it need not "show in each and every instance that it offered assurances of confidentiality."[14] Defs.' Reply at 11. Fair enough. But here, the Agency "warn[ed] that under some circumstances, information will be disclosed." *Pub. Just. Found.*, 2021 WL 1873186, at *5. The Agency's "notice *disclaimed* confidentiality, rather than provided an assurance of it." *Humane Soc'y Int'l*, 2021 WL 1197726, at *5.

Borrowers were put on notice that the information they provide—including the loan's intended use—could be shared with nongovernmental entities like the Society. This is further evidence that Exemption 4 does not apply.[15]

## C.

Finally, the Agency applied Exemption 6 to redact, as relevant here, the name, address, and NAICS number of loan recipients, as well as the "intended use of loan proceeds." *See* Morris Decl. ¶ 15 (listing information withheld under Exemption 6); McLean Decl. ¶ 33.

"FOIA Exemption 6 allows an agency to withhold 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.'" *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1227–28 (D.C. Cir.

---

[14] The Agency relies on FOIA's legislative history to "confirm" its reading. *See* Defs.' Reply at 11. But "the practice of utilizing legislative history for the purpose of giving authoritative content to the meaning of a statutory text" is not persuasive. *See Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 622 (1991) (Scalia, J., concurring in the judgment); *see also Food Mktg. Inst.,* 139 S. Ct. at 2364 ("this Court has repeatedly refused to alter FOIA's plain terms on the strength only of arguments from legislative history").

[15] Since the Agency failed to meet its burden under Exemption 4, it necessarily "failed to satisfy the 'heightened' foreseeable-harm requirement as well." *Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 113.

2008) (quoting 5 U.S.C. § 552(b)(6)). FOIA's strong presumption for disclosure is at its zenith when courts scrutinize Exemption 6 assertions. *Animal & Plant Inspect. Serv.*, 386 F. Supp. 3d at 42 (citing *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014)).

Courts follow a two-step process when considering withholdings under Exemption 6. *Am. Immig. Lawyers Ass'n v. Exec. Off. for Immig. Review*, 830 F.3d 667, 673 (D.C. Cir. 2016). First, the Court determines whether the records are "personnel, medical, or 'similar' files covered by Exemption 6." *Multi Ag Media LLC*, 515 F.3d at 1228. If they are, the Court decides whether disclosure "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media LLC*, 515 F.3d at 1228.

## 1.

First, are the records "personnel, medical, or 'similar' files" under Exemption 6? They are.

Exemption 6 extends beyond the "'narrow class of files containing only a discrete kind of personal information.'" *Id.* (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). It also covers "'detailed Government records on an individual which can be identified as applying to that individual.'" *Id.* The Circuit in *Multi Ag Media LLC* established that "Exemption 6 applies to financial information in business records when the business is individually owned or closely held, and the records would necessarily reveal at least a portion of the owner's personal finances." *Id.* at 1228–29 (cleaned up); *see also Consumers' Checkbook, Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1051 (D.C.

Cir. 2009) ("We have, however, recognized substantial privacy interests in business-related financial information for individually owned or closely held businesses[.]").

*Multi Ag Media LLC* controls here. A loan applicant "must be the operator or owner/operator of a family sized farm." Welch Decl. ¶ 23. "Based on [the Agency's] experience in handling the documents at issue, the financial interests of closely held businesses whose information are redacted under Exemption 6 are traceable to individuals." Suppl. Morris Decl. ¶ 13. The Agency considers a business to be "individually owned" or "closely held" if that business "is owned, directly or indirectly, by 5 or fewer individual persons holding more than 50 percent ownership interest in the legal entity structure." *Id.* And the Agency "ensured that the information at issue here was provided by closely held businesses according to this formula." *Id.* On the whole, it is reasonable to infer that the records are traceable to individuals and covered by Exemption 6. *See Multi Ag Media LLC*, 515 F.3d at 1228–29.

The Society says that the Agency "cannot lump all of these loans and guarantees together." Pl.'s Cross-Mot. at 36. But the Agency need not "offer evidence of specific farms owned by named individuals whose privacy interests in their personal information would be compromised by disclosure." *Multi Ag Media LLC*, 515 F.3d at 1229; *see also id.* (recognizing that the "affidavits do not establish the number of farms for which the information would be easily traceable to individuals"). The Society acknowledges that the "loans and loan guarantees are *primarily* available to family-sized farms." Pl.'s SOMF ¶ 4 (emphasis added). There is enough to show that "at least a significant portion" of the documents involve individuals or closely held businesses, which is "sufficient for [the Court] to conclude that the files are covered by Exemption 6." *Multi Ag Media LLC*, 515 F.3d at 1229.

**2.**

The Court next balances "the public interest in disclosure against the interest Congress intended [Exemption 6] to protect." *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994) (cleaned up). Disclosure must "compromise a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (cleaned up). "[T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *FLRA*, 510 U.S. at 495 (cleaned up). So "unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue." *Nat'l Ass'n of Home Builders*, 309 F.3d at 34 (cleaned up).

**a.**

The Agency asserts that these "farmers have legitimate privacy interests in keeping their names and addresses from the public, particularly in light of the competitive harms that confirmation of status as an FLP borrower can cause." Defs.' Mot. at 23. According to the Agency, release of this information allows the public and competitors to "draw strong negative inferences about borrowing farmers' financial circumstances." *Id.* "If it becomes common knowledge that someone has an [FLP] loan, it gives others a competitive advantage over them." Welch Decl. ¶ 40. For example, "[k]nowledge of a farm's or ranch's financial health can lead to competitors offering incentives to suppliers or tailoring sales prices to remove the economically challenged from competition." *Id.*; *see also id.* (providing other reasons why farmers would not want this information disclosed).

Perhaps.  But the "Court harbors doubts about the force of [the Agency's] concerns."  *WP Co.*, 502 F. Supp. 3d at 21.  As the Society points out, "the amount of information that can be gleaned about the individual owner's finances through disclosure of her status as an FLP participant is limited."  Pl.'s Cross-Mot. at 36.  Successful loan applicants must have "acceptable credit history," "not be delinquent on a federal debt," "not have any outstanding unpaid judgments," and "not have received debt forgiveness from FSA."  Defs.' SOMF ¶ 51.  So participation in the FLP does not necessarily convey poor financial health, as the Agency suggests.  *Accord Pub. Just. Found.*, 2021 WL 1873186, at *7 ("[L]oan information gives a mere peek into farmers' finances but does not bear as direct a relationship to the value of their land or financial situation").

Yet the "standard at this stage is not very demanding."  *Multi Ag Media LLC*, 515 F.3d at 1230; *see also WP Co.*, 502 F. Supp. 3d at 21 (turning to public interest analysis "[w]ith a valid, albeit weak, privacy interest").  The Court is "willing to engage in the balancing inquiry by concluding that disclosure of the information would constitute more than minimal invasion[] of personal privacy."  *Multi Ag Media LLC*, 515 F.3d at 1230 (cleaned up).

**b.**

The public's potential interest in the material is next.  A "privacy interest may be substantial—more than de minimis—and yet be insufficient to overcome the public interest in disclosure."  *Id.*  The Court's "inquiry is limited to the question whether disclosure will shed light on the agency's performance of its statutory duties."  *Nat'l Ass'n of Home Builders*, 309 F.3d at 35 (cleaned up).

The Agency suggests that the public interest "is minimal, if not zero." Defs.' Mot. at 24. "But there is considerably more than nothing on the public interest side of the scale." *Citizens for Resp. & Ethics in Wash.*, 746 F.3d at 1093.

The Society explains that "disclosure of the very basic information [it] seeks would allow [it] to better understand what FSA is 'up to' and open FSA's loan-making decisions to the light of public scrutiny." Pl.'s Cross-Mot. at 39 (cleaned up). The loan data would help ensure that the Agency "is responsibly administering its loan program in compliance with federal laws and regulations, particularly those relating to the environment." Pl.'s Reply at 21. Specifically, the Society contends that the information "will allow [it] to more easily monitor whether [the Agency] is carrying out its statutory duties" under NEPA and the Endangered Species Act ("ESA"). Pl's Cross-Mot. at 40 (cleaned up).

NEPA requires the Agency to undertake an environmental analysis "before taking any major federal action that significantly affects the environment." *Id.* (citing 42 U.S.C. § 4332(2)(C)). The requested loan data involves animal production facilities in California counties that experienced drought. *See* Holbein Decl. ¶ 15. The Society posits that the Agency may have contributed to the drought conditions through their financial assistance to these facilities, which consume massive amounts of water. *See id.* ¶¶ 26–34. With these loan details, the Society can "evaluate whether these and other environmental risks were properly assessed by [the Agency] in a way that satisfied its duties under NEPA." Pl.'s Cross-Mot. at 40. Indeed, the Society requests the Environmental Worksheets the Agency completes to comply with NEPA. *See* Defs.' SOMF ¶¶ 52–54. The Society can "assess whether FSA identified risks at all, let alone whether identified them properly," before issuing the loans. Pl.'s Cross-Mot. at 41.

The ESA similarly requires the Agency to "consult with the relevant ESA-administering agency" to ensure that its actions "are not likely to jeopardize the continued existence of any ESA-listed species or result in the destruction or adverse modification of such species' critical habitat." *Id.* (citing 16 U.S.C. § 1536(a)(2)). There are endangered and threatened species in the California counties identified in the Society's FOIA request. *See* Decl. of Stephanie Boyles Griffin ¶¶ 28–39, ECF No. 65-8. And the Society has outlined how animal production facilities that received loans in these counties threaten wildlife. *See id.* ¶¶ 11–26. Without the limited loan details, the Society cannot assess whether the Agency considered all the potential environmental consequences relevant under the ESA. Pl.'s Cross-Mot. at 42.

The Agency responds that the "asserted public interest is based on shedding light on what the loan applicants are up to, instead of shedding light on what the government is up to." Defs.' Reply at 15. True, the requested information pertains to individuals and entities—names, addresses, operation type, and loan purpose. But the public still has an interest in such information if it helps "monitor whether the agency is correctly doing its job." *Multi Ag Media LLC*, 515 F.3d at 1231. And here, "what the loan applicants are up to" is only possible because of "what the government is up to." By seeking public assistance, the applicants have also invited the public scrutiny that appropriately accompanies the disbursal of public funds.

Consider *Multi Ag Media LLC*. There, the Circuit found a public interest in farmers' acreage amounts, crop information, and maps related to the value of farmers' land and production capabilities. The Circuit reasoned that the records allowed the public to "more easily determine whether [the Agency] is catching cheaters and lawfully administering its subsidy and benefit programs." *Id.* at 1232. So too here. The information involves farmers and closely held entities, but it helps ensure the Agency's compliance with NEPA and the ESA. *See Nat'l Ass'n*

*of Home Builders*, 309 F.3d at 36 ("Because disclosure of site-specific information . . . could contribute to public understanding of the operations or activities of the government, it constitutes a cognizable public interest under FOIA." (cleaned up)).

More, "there is a special need for public scrutiny of agency action that distributes excessive amounts of public funds in the form of subsidies and other financial benefits." *Multi Ag Media LLC*, 515 F.3d at 1232 (collecting cases). In 2020, the Agency made loan decisions involving a record $7.5 billion of taxpayer funds. Pl.'s Reply at 23 (citing Agency data). "The public cannot understand the loan program without knowing . . . names and addresses of recipients, and earmarks for those federal funds." *Pub. Just. Found.*, 2021 WL 1873186, at *7.

The Agency's "rather tepid showing" of a privacy interest does not outweigh the strong public interest in monitoring the Agency's statutory compliance and use of public funds.[16] *Multi Ag Media LLC*, 515 F.3d at 1233. The Agency cannot rely on Exemption 6 to withhold a loan recipient's names, address, and NAICS number, or the intended use of the loan proceeds.

## IV.

The Society is entitled to the limited information that it seeks, subject to the parameters the Court has established. The Court will grant Plaintiff's summary judgment motion and deny the Defendants' motion. A separate Order will issue.

Dated: June 28, 2021

_____
TREVOR N. McFADDEN, U.S.D.J.

---

[16] Because the Court finds that the Agency improperly withheld certain information, the Court need not reach whether the Agency released all reasonably segregable material. *Accord Stein v. CIA*, 454 F. Supp. 3d 1, 20 (D.D.C. 2020) ("Because this holding obligates [the agency] to produce additional documents, the court need not consider at this juncture [plaintiff's] claim that [the agency] failed to release all reasonably segregable, non-exempt information[.]").